## ARKANSAS POULTRY FEDERATION, Petitioner,

v.

## UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

### No. 87–1529.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1988.

Decided June 30, 1988.

Michael H. Mashbrun, Fayetteville, Ark., for petitioner.

Dov Weitman, Washington, D.C., for respondent.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

In January 1987 the Administrator of the Environmental Protection Agency (EPA) promulgated final regulations defining "interference" and "pass through" for purposes of the National Pretreatment Standards. 40 C.F.R. § 403.3(i), (n) (1987). The Arkansas Poultry Federation filed this petition seeking review of the Administrator's action in promulgating these definitions. Petitioner argues the definitions are inconsistent with § 307(b)(1) of Federal Water Pollution Control Act Amendments of 1972 (the Act), 33 U.S.C. § 1317(b)(1), as amended by the Water Quality Act of 1987, Pub.L. No. 100-4, 101 Stat. 41 (1987), as construed by the Third Circuit in *National Ass'n of Metal Finishers v. EPA*, 719 F.2d 624 (3d Cir.1983) (*NAMF*), *rev'd on other grounds sub nom. Chemical Manufacturers Ass'n v. NRDC*, 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985). Petitioner also argues the definitions are unconstitutionally vague. For the reasons discussed below, we deny the petition for review.

## JURISDICTION AND STANDARD OF REVIEW

Under § 509(b)(1)(C) of the Act, 33 U.S.C. § 1369(b)(1)(C), we have jurisdiction to exercise a limited review of the Administrator's action in promulgating the 1987 definitions. *NAMF*, 719 F.2d at 632 n. 4; *see Modine Manufacturing Corp. v. Kay*, 791 F.2d 267, 269-71 (3d Cir.1986) (applicability of general pretreatment standards to brass cleaning company); *Cerro Copper Products Co. v. Ruckelshaus*, 766 F.2d 1060, 1066 (7th Cir.1985) (pretreatment standards for wastewater).

Under § 10(e) of the Administrative Procedure Act, we may not set aside agency action unless we find it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We must defer to any reasonable interpretation given the statute by the agency charged with its administration. *EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980), *citing Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). "Great deference" is especially appropriate when a "complex" statute like the Act is at issue. *Train v. NRDC*, 421 U.S. 60, 87, 95 S.Ct. 1470, 1485, 43 L.Ed.2d 731 (1975). An agency's interpretation of its own regulation is similarly entitled to "great deference" unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). The agency's actions are thus entitled to a presumption of regularity, and the party petitioning for review has the burden of overcoming that presumption. *E.g., Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). We do not, however, merely rubberstamp agency action. *E.g., Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insur-*

*ance Co.*, 463 U.S. 29, 48–49, 103 S.Ct. 2856, 2869–2870, 77 L.Ed.2d 443 (1983).

STATUTORY BACKGROUND

Petitioner's members are poultry producers who discharge biological wastes into municipal sewage systems or publicly owned treatment works (POTWs). After the POTW treats the wastewater, the POTW discharges the treated wastewater into the nation's waters. For purposes of the Act, the POTW is a "direct" discharger and its discharge must meet certain conditions, or effluent limitations, contained in a permit issued under the National Pollutant Discharge Elimination System (NDPES), 33 U.S.C. § 1342. *See id.* §§ 1311(b)(1)(B), (C), 1314(d)(1). Similarly, the sludge, or sewage residue that is a by-product of the POTW's treatment processes, must meet certain requirements governing its use or disposal.

Most municipal sewage systems, or POTWs, were designed and built to treat domestic sewage and other similar biological waste. However, industrial users of POTWs may discharge wastes in concentrations or volumes that cannot be adequately treated by the receiving POTW. How indirect industrial discharges can adversely affect the operation of the receiving POTW was summarized by the EPA in the supplementary information accompanying the 1987 definitions.

Industrial users' discharges can inhibit or disrupt a POTW and thereby cause POTW noncompliance [with its NPDES permit limits] by physically disrupting the flow of wastewater through the POTW's system, by chemically or physically inhibiting the treatment processes, or by hydraulically overloading the plant so that proper settlement does not occur or wastes are retained for too short a time to receive adequate treatment before discharge. Pollutants discharged by industrial users [which cannot by treated by the POTW may pass through the POTW in amounts or concentrations that exceed the POTW's NPDES permit limits and] may also contaminate the sewage sludge that is a by-product of the POTW's treatment processes and there-

by prevent the POTW from complying with requirements governing its chosen sewage sludge use of disposal practices. General Pretreatment Regulations, 52 Fed. Reg. 1,586, 1,590 (1987) (hereinafter GPR).

Congress recognized that the pollutants discharged by some industrial users of POTWs could interfere with the operation of the POTWs or could pass through the POTWs without adequate treatment and required industrial users to pretreat their wastes before discharging them into POTWs. Section 307(b) of the Act authorizes the Administrator to establish pretreatment standards "to prevent the discharge of any pollutant through [POTWs], which pollutant interferes with, passes through, or is otherwise incompatible with such works." 33 U.S.C. § 1317(b)(1).

REGULATORY HISTORY AND THE *NAMF* LITIGATION

EPA first promulgated a regulation specifically defining "interference" in 1978. 43 Fed.Reg. 27,736 (1978). The 1978 regulation defined "interference" as an "inhibition or disruption of a POTW's sewer system, treatment processes or operations which contributes to a violation of any requirement of [the POTW's] NPDES permit."

In 1979 the Administrator proposed to narrow the ambit of the definition by requiring an inhibition or disruption which "causes or significantly contributes" to the violation of the POTW's permit, and by including a "safe harbor" provision exempting from the definition inhibitions and disruptions caused by an [industrial user] "in compliance with specific prohibitions or standards developed by Federal, State or local governments." As promulgated, however, the 1981 general pretreatment amendments omitted the safe harbor provision and defined "significantly contributes" using three numbered categories. The [1981] amended regulations thus redefine[d] "interference" as:

an inhibition or disruption of the POTW ... which is a cause of or significantly contributes to either a violation of any requirement of the POTW's

NPDES permit (including any increase in the magnitude or duration of a violation) or to the prevention of sludge use or disposal by the POTW [examples of significant contribution omitted].

*NAMF*, 719 F.2d at 639, *citing* 40 C.F.R. § 403.3(i) (1982) (1981 amended definitions).

EPA first defined "pass through" in the 1981 General Pretreatment Regulations, 40 C.F.R. § 403.3(n) (1982). The definition was very similar to the amended definition of "interference." "Pass through" was defined as "the Discharge of pollutants through the POTW into navigable waters in quantities or concentrations which are a cause of or significantly contribute to a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation)." Like the definition of "interference," the definition further defined what constituted significant contribution.

The 1981 amended definitions were at issue in the *NAMF* litigation. The petitioners argued that the 1981 amended definitions of "interference" and "pass through" were inconsistent with the Act because industrial users could be subjected to liability for interference or pass through without regard to fault, causation or consequences. The Third Circuit agreed and held that "neither the language of the Act nor the intent of Congress appears to contemplate liability without causation." 719 F.2d at 640. The court held that because the "significantly contributes to" language in the definition of "interference" could result in liability even when the disruption of the POTW treatment process or the sludge disposal program was not caused by the industrial user's discharge but by a mistake or malfunction of the POTW, the definition was inconsistent with the Act. *Id.* at 640–41. The court noted, however, that "[i]f the definition of 'interference' [had] required that an indirect discharger be both 'the cause of' *and* 'significantly contribute to' the POTW's permit violation, it would [have been] consistent with [the Act's] causation requirement." *Id.* at 641 (emphasis in original). The court did not reach the merits of the definition of "pass through" because the definition had not been promul-

gated in compliance with the notice and comment requirement of the Administrative Procedure Act, 5 U.S.C. § 553(c). 719 F.2d at 641. Both definitions were remanded to the Administrator for revision.

In accordance with the decision in *NAMF*, EPA suspended the definitions of "interference" and "pass through" on February 10, 1984. 49 Fed.Reg. 5,131 (1984).

THE 1987 DEFINITIONS

In June 1985 EPA published proposed definitions of "interference" and "pass through." 50 Fed.Reg. 25,528 (1985). In 1987, following consideration of all comments received, EPA promulgated final regulations defining "interference" and "pass through." Title 40 C.F.R. § 403.3(i) (1987) defines "interference" as

a Discharge which, alone or in conjunction with a discharge or discharges from other sources, both:

(1) Inhibits or disrupts the POTW, its treatment processes or operations, or its sludge processes, use or disposal; and

(2) Therefore is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation) or of the prevention of sewage sludge use or disposal in compliance with the following statutory provisions and regulations or permits issued thereunder (or more stringent state or local regulations) [specific statutory provisions omitted].

Title 40 C.F.R. § 403.3(n) (1987) defines "pass through" as

a Discharge which exits the POTW into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the POTW's NPDES permit (including an increase in the magnitude or duration of a violation).

The 1987 regulations also established two affirmative defenses to liability for "interference" or "pass through." The industrial user cannot be held liable if it did not know or have reason to know that its discharge, alone or in combination with discharges from other sources, would result in

violation of a POTW's NPDES permit or would prevent lawful sludge use or disposal, and can demonstrate that either (1) the discharge was in compliance with local numerical limits developed pursuant to 40 C.F.R. § 403.5(c) for each pollutant that caused interference or pass through ("local limit compliance defense"), or (2) if local numerical limits have not been established, the discharge directly prior to and during the interference or pass through did not differ substantially in nature or constituents from the user's prior discharge when the POTW was in compliance ("unchanged discharge defense").

CONSISTENCY WITH THE ACT

■ Petitioner first argues that the 1987 definitions of "interference" and "pass through" are inconsistent with the Act as construed in *NAMF*. Petitioner argues that under the Act, as construed in *NAMF*, liability could only be imposed upon an industrial user if its discharge *both caused and significantly contributed to* the POTW's NPDES permit violation. Petitioner relies upon the following sentence from the decision: "If the definition of 'interference' required that an indirect discharger be both 'the cause of' *and* 'significantly contribute to' the POTW's permit violation, it would be consistent with that causation requirement." 719 F.2d at 641 (emphasis in original). Petitioner thus argues that the Act, as construed in *NAMF*, requires "significant contribution" as a prerequisite for liability in addition to causation.

We disagree. We believe petitioner has misread the *NAMF* holding. *NAMF* held that liability could not be imposed on industrial users without proof of causation. *Id.* at 640–41, *citing* 33 U.S.C. § 1317(b), (c). The *NAMF* court held the 1981 amended definition of "interference" was inconsistent with the Act because it "require[d] only that the discharge 'is a cause of' *or* 'significantly contributes,' and define[d] 'significantly contributes' by substituting three categories of discharger misconduct, at least two of which exclude any necessity for proving that the discharge caused the disruption." *Id.* at 640 (emphasis in original; footnote omitted), *citing* 40 C.F.R. § 403.3(i)(1), (2) (1982).

Further, we do not agree that the sentence from *NAMF* relied upon by petitioner requires significant contribution *in addition* to causation. Rather, we read that sentence as a rejection of EPA's litigation position. EPA had argued that the "significantly contributes" language should be construed to incorporate the element of causation because the phrase "a cause of or significantly contributes to" was meant to be read conjunctively. 71 F.2d at 640, 641 n. 15. In other words, EPA had argued that the phrase should be read as if the conjunction had been "and" instead of "or." If the phrase had in fact been written that way, the 1981 amended definition would have imposed liability upon an industrial user for causing, and not merely for contributing to, the POTW's NPDES permit violation and thus have been consistent with the Act's causation requirement. *Id.* at 641. The *NAMF* court noted, however, that, "[a]s written, ... the [1981 amended] definition fail[ed] to require such causation, and thus violate[d] the clear meaning of the Act." *Id.*

■ In connection with the above argument, petitioner also argues that the 1987 definitions are inconsistent with the Act because an industrial user may be held liable even if its discharge is only *a* cause of the POTW's NPDES permit violation. We agree with the *NAMF* court that the Act does not require that the discharge be the sole cause of the POTW's NPDES permit violation in order to hold the industrial user liable. *Id.* ("unless it is a cause"). EPA's determination that the industrial user's discharge need only be "a cause" of the POTW's NPDES permit violation, even though another factor, such as the POTW's operation difficulties, or discharges from domestic or other industrial sources, whether alone or in combination, are independent causes of such violation, is reasonable and consistent with the Act. GPR, 52 Fed.Reg. at 1,590–92.

Moreover, an industrial user can avoid liability even if its discharge is a cause of the POTW's NPDES permit violation by establishing either the "local limit compliance" or the "unchanged discharge" affirmative defense. 40 C.F.R. § 403.5(a)(2)(ii)(A), (B).

Petitioner also argues that, under the 1987 definitions, an industrial user could be liable for the POTW's NPDES permit violation even though the sole cause of such violation is the POTW's inefficient or improper operation. We disagree. The definitions provide that under these circumstances the industrial user's discharge cannot be a cause of "interference" or "pass through." This was made expressly clear in the supplementary information accompanying the regulations. GPR, 52 Fed.Reg. at 1,591.

■ Petitioner also argues that the 1987 definitions are inconsistent with the Act because an industrial user may be held liable for "interference" or "pass through" when its discharge may be only a *de minimis* cause of the POTW's NPDES permit violation. We note, however, that at oral argument, in response to a specific question from the bench, counsel for EPA conceded that the regulations require more than *de minimis* causation. This response may lack specificity, but it is nonetheless sufficient to answer petitioner's argument: an industrial user will not be held liable if its discharge is only a *de minimis* cause of the POTW's NPDES permit violation.

VAGUENESS

■ Petitioner next argues that the 1987 definitions are unconstitutionally vague. Petitioner argues that the 1987 definitions fail to put industrial users on notice as to what activities could cause "interference" or "pass through" and specifically fail to provide industrial users with objective standards for their pretreatment obligations. Petitioner relies upon *United States v. City of Hopewell*, No. 80–0662–R (E.D.Va. Nov. 26, 1980), and *CPC International, Inc. v. Train*, 515 F.2d 1032, 1052 (8th Cir.1975) (*CPC*).

We disagree. The 1987 definitions provide adequate notice to industrial users of their pretreatment obligations and objective standards by reference to other regulations. The 1987 definitions "specify that interference and pass through exists only if an industrial user's discharge results in a violation of the POTW's NPDES permit (or

impairs the POTW's chosen sludge use or disposal option, in the case of the interference definition)" and thus expressly define the industrial user's pretreatment obligations in terms of the POTW's compliance with its NPDES permit limits and sludge handling regulations. GPR, 52 Fed.Reg. at 1,595–96. The effluent limitations in the POTW's NPDES permit contain numerical limitations of the amount, rate or concentration of specific pollutants or parameters for BOD (biochemical oxygen demand), TSS (total suspended solids) and pH (acidity). *See* 40 C.F.R. Pts. 124, 125, 129, 133, 400–469 (1987). The definition of "pass through" expressly refers to federal environmental statutes regulating sludge use or disposal. 40 C.F.R. § 403.3(i)(2) (listing the 1972 Act, the Resource Conservation and Recovery Act, the Clean Air Act, the Toxic Substances Control Act, and the Marine Protection, Research and Sanctuaries Act).

EPA argues that under the Act the industrial user has an "implicit duty, if not an express legal duty, to determine what level of [pretreatment] is needed to avoid causing POTW noncompliance with these requirements." GPR, 52 Fed.Reg. at 1,595. Under the 1987 definitions, the industrial user has an additional incentive to contact its local POTW about the POTW's NPDES permit limits, sludge handling requirements and, if any, applicable local limits—compliance with applicable local limits is an affirmative defense. 40 C.F.R. § 403.5(a)(2)(ii)(A) (local limits compliance affirmative defense).

The industrial user can thus overcome uncertainty concerning its compliance obligations and legal liability by identifying the pollutants in its discharge that are introduced to the POTW at significant levels and requesting that the POTW develop local limits for those pollutants in accordance with [40 C.F.R.] § 403.5(c). For those pollutants, the [industrial user] need only comply with the local limits unless it subsequently knows or has reason to know that it is causing or would cause interference or pass through.

. . . .

. . . Any industrial [user] can study its raw material and processes, and analyze

**330**

its wastewater effluent to determine which pollutants may be discharged continuously, periodically, or occasionally to the POTW.

GPR, 52 Fed.Reg. at 1,590, 1,593. If the POTW has not yet established local limits, the industrial user can establish an objective standard for its pretreatment obligations by determining whether its past discharges would cause "interference" or "pass through" in light of the POTW's history of compliance with its NPDES permit and applicable sludge requirements. 40 C.F.R. § 403.5(a)(2)(ii)(B) (unchanged discharge affirmative defense); GPR, 52 Fed.Reg. at 1,590.

Petitioner's reliance upon *United States v. City of Hopewell* and *CPC* is misplaced. The regulations found to be unconstitutionally vague in each case were earlier and much more general versions of the pretreatment regulations. *CPC*, 515 F.2d at 1052 (1973 regulations); *United States v. City of Hopewell*, slip op. at 12 (1978 definition of "interference"); *cf. National Renderers Ass'n v. EPA*, 541 F.2d 1281, 1291 (8th Cir.1976) (1975 pretreatment standards for rendering facilities).

Accordingly, the petition for review is denied.