**ARKANSAS STATE BANK COMMISSIONER,**
Plaintiff,

v.

The **RESOLUTION TRUST CORPORATION, an agency of the United States; The Federal Deposit Insurance Corporation, an agency of the United States; and Robert L. Clarke, in his official capacity as the Comptroller of the Currency of the United States, Defendants,**

**Arkansas Independent Bankers Association, A Non–Profit Arkansas Corporation; and Worthen Bank & Trust Company, N.A., Intervenors.**

No. LR–C–90–124.

United States District Court,
E.D. Arkansas, W.D.

July 9, 1990.

Jeanette Denhammcclendon, Atty. Gen's. Office, Little Rock, Ark., for plaintiff.

Harry Light, Friday, Eldredge & Clark, Little Rock, Ark., Michael Tucci, Washington, D.C., Patrick C. Harris, U.S. Atty's. Office, Little Rock, Ark., Mark L. Leemon, Office of Comptroller of the Currency, Washington, D.C., for defendants.

David M. Hargis, Little Rock, Ark., Leonard J. Rubin, Bracewell and Patterson, Washington, D.C., Hermann Ivester, Ivester, Skinner & Camp, Little Rock, Ark., for intervenors.

## MEMORANDUM AND ORDER

REASONER, District Judge.

Plaintiff, Arkansas State Bank Commissioner, brings this action for declaratory and injunctive relief against the Resolution Trust Corporation, the Federal Deposit Insurance Corporation, and Robert L. Clarke

in his official capacity as the Comptroller of the Currency. Relief is requested pursuant to 12 U.S.C. § 36(c); 12 U.S.C. § 1823(k) of the Financial Institutional Reform, Recovery, and Enforcement Act of 1989 (hereinafter "FIRREA"); 28 U.S.C. §§ 2201 and 2202; and 5 U.S.C. §§ 701 and 706. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346; and 5 U.S.C. §§ 702, 703, and 704.

## I.

Plaintiff, Arkansas State Bank Commissioner (hereinafter "Commissioner"), is charged with the execution of all laws passed by the State of Arkansas relating to the organization, inspection, supervision, control, liquidation, and dissolution of banks, bank holding companies, trust companies, industrial loan institutions, finance companies, and the banking business of Arkansas, as stated in Ark.Code Ann. § 23–31–205 (1987 & Supp.1989). In addition, the Commissioner has the power to make such rules and regulations as may be necessary to carry out the intent and purposes of all Arkansas laws and to issue cease and desist orders to any state bank, trust company, or other financial institution under his jurisdiction found to be violating the banking laws of this state or the rules and regulations promulgated by him. *See* Ark.Code Ann. § 23–31–205(b) (Supp. 1989).

Intervenor-plaintiff, Arkansas Independent Bankers Association (hereinafter "Independent Bankers"), is an Arkansas non-profit, incorporated association, representing 196 commercial banks with home offices in the State of Arkansas. Independent Bankers brings this action for declaratory and injunctive relief on behalf of its members who have been, or will be, injured by the defendants' alleged unlawful acts.

Defendant Resolution Trust Corporation (hereinafter "RTC") was established by Section 501 of FIRREA, 103 Stat. 369 (1989). In pertinent part, Section 501 provides that the RTC is an instrumentality and agency of the United States, exclusively managed by the Federal Deposit Insurance Corporation. One of the purposes of

FIRREA was to establish the RTC to contain, manage, and resolve failed savings associations. *See* 103 Stat. 187 (1989). One of the duties of the RTC is to carry out a program to manage and resolve all cases involving depository institutions, the accounts of which were insured by the Federal Savings and Loan Insurance Corporation before the enactment of FIRREA, and for which a conservator or receiver has been or may be appointed. *See* 12 U.S.C. § 1441a(b)(3) (Supp.1990). The RTC, in conducting its operations, is directed, among other things, to maximize the next present value return from the sale or other disposition of the depository institution, and to minimize the impact of such transaction on local financial markets.

Defendant Federal Deposit Insurance Corporation (hereinafter "FDIC") is an agency of the United States created under 12 U.S.C. § 1811, with the powers granted it under 12 U.S.C. §§ 1811–1833e.

Defendant Robert L. Clarke is the Comptroller of the Currency of the United States (hereinafter "Comptroller") and is the chief officer of the Bureau of the Department of Treasury known as the Office of the Comptroller of the Currency. *See* 12 U.S.C. § 1 (1989). The Comptroller is charged by law with the administration of the National Bank Act, 12 U.S.C. § 21 (1989), and his responsibilities include the chartering of national banking institutions and the approval of applications from national banking associations for permission to establish branch banking offices.

Intervenor Worthen Bank and Trust Company, N.A. (hereinafter "Worthen") is a national banking association organized under the laws of the United States with its principal place of business in Little Rock, Pulaski County, Arkansas.

## II.

The relevant facts in this case are not in dispute. On February 13, 1990, the RTC held an instructional bid meeting in Little Rock, Arkansas to provide potential purchasers of failed savings and loan associations in Arkansas with information about two savings and loan associations to be

offered for sale by the RTC. During its presentation, an RTC representative explained the RTC's position that Section 217(k) of FIRREA, 12 U.S.C. § 1823(k) (1989), authorizes the RTC to preempt Arkansas' restrictions on branch banking by an acquiring bank.[1]

On February 15, 1990, the RTC informed the Commissioner that the RTC would be willing to institute a declaratory action in order to proceed with the sale of failed savings and loan associations to state-chartered or national banks in Arkansas contrary to Arkansas' laws restricting branching by banks. On February 21, 1990, the RTC advised the Commissioner that another bid meeting was scheduled for February 27, 1990. In an attempt to enjoin the threatened override of Arkansas law, the State Bank Commissioner, on February 23, 1990, filed a verified motion for emergency declaratory relief and for temporary restraining order and a motion for preliminary injunction. The Court conducted a hearing on the motion for temporary restraining order on February 26, 1990, and denied the motion without prejudice to plaintiff's right to renew. The Court received the assurances of defendants that plaintiff would be given forty-eight (48) business hours actual notice of any bids submitted that attempted to override state branch banking laws. The RTC then cancelled the meeting scheduled for February 27, 1990. Thereafter, the Commissioner withdrew its motion for preliminary injunction, and Independent Bankers moved, and

was granted the right, to intervene in this action on April 26, 1990.

On June 8, 1990, the RTC held another bid meeting in Little Rock, Arkansas to provide potential purchasers with information about savings and loan associations in Arkansas to be offered for sale by the RTC, including Independence Federal Bank, F.S.B. (hereinafter "Independence").

On or about June 21, 1990, Worthen submitted a bid for certain assets and liabilities, as well as twenty branch offices of Independence. On June 26, 1990, the RTC notified the Commissioner of its intent to override Arkansas' branch banking laws. Worthen's bid was expressly contingent on the RTC's grant of a state law override permitting it to operate Independence's twenty branch offices, located in fifteen counties throughout Arkansas, as branches of Worthen.

Upon receipt of notice of the RTC's intent to override Arkansas law, the Commissioner and Independent Bankers each filed motions for a temporary restraining order and preliminary injunction. In conjunction with the motions for preliminary injunction, the Commissioner and Independent Bankers also requested the Court to consolidate the hearing on the preliminary injunction with a trial on the merits, which request the Court granted.

Worthen filed a complaint in intervention and a response to the motions for preliminary injunction and declaratory relief. RTC filed a response to the motions for

---

1. Ark.Code Ann. § 23–32–1202 (Supp.1989) provides in relevant part:

    (a) No banking institution shall engage in the business of banking at any location other than at a principal banking office or branch bank in this state except as otherwise permitted by law.

    (b) Any bank may establish a full service branch and may establish, maintain, and use a customer-bank communication terminal, as that term is defined in § 23–32–1301, provided that its supervisory banking authority approves its application for the full service branch. Full services branches and customer-bank communication terminals may only be established as follows:

    (1) A bank may establish full service branches and customer-bank communication terminals anywhere within the county in

which the establishing bank's principal banking office is located;

    (2) A bank which relocates its principal banking office may continue to use its former principal banking office location as a full service branch and customer-bank communication terminal so long as the use as a banking facility is uninterrupted;

    (3) In addition to the above subdivisions, after December 31, 1993, a bank may locate one (1) or more full service branches and customer-bank communication terminals anywhere within any counties contiguous to the county in which its principal banking office is located;

    (4) After December 31, 1998, a bank may locate one (1) or more full service branches and customer-bank communication terminals anywhere in this state.

preliminary injunction and declaratory relief and a motion to dismiss the complaints of the Commissioner and Independent Bankers. FDIC and the Comptroller also filed motions to dismiss the complaints filed by the Commissioner and Independent Bankers.

### III.

In response to several challenges to the RTC's efforts to override state law pursuant to 12 U.S.C. § 1823(k), on May 24, 1990, the RTC adopted the "Retention of Thrift Branches Acquired by Banks in Emergency Acquisitions" Rule, effective June 1, 1990 (hereinafter "Override Rule"). *See* 55 Fed. Reg. 22,323 (1990) (to be codified at 12 C.F.R. § 1611.1 (1990)).[2] The RTC derives what authority it has to make and enforce its Override Rule from 12 U.S.C. § 1823(k)(1)(A)(i) (hereinafter "Section (k)(1)") which provides as follows:

(k) Emergency acquisitions

(1) In general

    (A) Acquisitions authorized

        (i) Transactions described

    *Notwithstanding any provision of State law,* upon determining that severe financial conditions threaten the stability of a significant number of savings associations, or of savings associations possessing significant financial resources, *the Corporation,* in its discretion and if it determines such authorization would lessen the risk to the Corporation, *may authorize—*

        (I) *a savings association* that is eligible for assistance pursuant to sub-

section (c) of this section to merge or consolidate with, or *to transfer its assets and liabilities to,* any other savings association or *any insured bank,*

        (II) any other savings association to acquire control of such savings association, or

        (III) any company to acquire control of such savings association or to acquire the assets or assume the liabilities thereof.

The Corporation may not authorize any transaction under this subsection unless the Corporation determines that the authorization will not present a substantial risk to the safety or soundness of the savings association to be acquired or any acquiring entity.

(emphasis added).

Section (k)(1) speaks only in terms of transferring a savings association's assets to a bank. It says nothing regarding the operation of those assets as branches, or otherwise, after the transfer. At first glance, however, the argument of the Commissioner and Independent Bankers that the override power, therefore, extends only to the acquisition of the branches and not to their operation would appear overly restrictive. After all, why would a bank be interested in purchasing a savings association's branches if it could not operate them? Yet, their argument becomes more tenable with an examination of the provisions of 12 U.S.C. § 1823(k)(4)(A) (hereinafter "Section (k)(4)") which provides as follows:

(4) Branching provisions

---

**2.** 55 Fed.Reg. 22,323 (1990) provides:

(a) Purpose. (1) Section 13(k) of the Federal Deposit Insurance Act (12 U.S.C. 1823(k)), made applicable to the RTC by section 21A(b)(4) of the Federal Home Loan Bank Act (12 U.S.C. 1441a(b)(4)), grants to the RTC the power to authorize emergency acquisitions of failed or failing savings associations. Under section 13(k), the RTC may authorize such acquisitions notwithstanding any provision of State law, upon making a determination that severe financial conditions threaten the stability of a significant number of savings associations, or savings associations possessing significant financial resources, and a determination that such authorization would lessen the risk to the RTC. Authorizations of acquisi-

tions of State-chartered savings associations are subject to prior RTC consultation with State officials and a vote of 75 percent of the voting members of the RTC Board of Directors to authorize such acquisitions over the objection of State officials.

(2) The regulations of this section provide for the retention and operation by acquiring banks of the offices of savings associations acquired pursuant to Section 13(k).

(b) Each existing office or other existing facility of each savings association that is merged or consolidated with, or the assets and liabilities of which are transferred to, an insured bank pursuant to section 13(k) may be retained by the insured bank and operated by the bank as a branch or other facility.

**554**

(A) In general

*If a* merger, consolidation, *transfer or acquisition* under this subsection *involves a* SAVINGS ASSOCIATION eligible for assistance *and a bank* or bank holding company, a SAVINGS ASSOCIATION *may retain and operate any existing branch or branches* or any other existing facilities. If the SAVINGS ASSOCIATION continues to exist as a separate entity, it may establish and operate new branches to the same extent as any savings association that is not affiliated with a bank holding company and the home office of which is located in the same State.

(emphasis added). Section (k)(4) speaks only in terms of an acquired savings association retaining and operating its branches. It says nothing about a bank converting those branches to bank branches and so operating them. The parties have directed the Court to two decisions interpreting these provisions which come to entirely opposite conclusions. Favoring the position of the Commissioner and Independent Bankers is the case of *State of Colorado v. Resolution Trust Corporation,* No. 90–Z–190, 1990 WL 51191 (D.Colo. Feb. 12, 1990). The Colorado District Court treated the issue as clear, straight-forward, and unnecessary of much discussion, dealing with Section (k)(4) in one sentence:

12 U.S.C. § 1823(k)(4)(A) provides that a savings association, *not a bank,* may retain and operate any existing branch or branches or any other existing facilities.

*State of Colorado,* No. 90–Z–190, slip op. at 2 (emphasis added). Accordingly, the RTC was temporarily restrained from transferring assets to a national bank to the extent the branches would be operated by the bank in violation of Colorado's law, which is similar to Ark.Code Ann. § 23–32–1202 (Supp.1989).

On the other hand, the New Mexico District Court treated the interpretation of Section (k)(4) with somewhat more discussion in its conclusions of law issued in the case of *Independent Community Bankers Association of New Mexico v. Resolution Trust Corporation,* No. CIV. 90–0532–SC,

1990 WL 119633 (D.N.M. June 15, 1990). In denying a request to enjoin the RTC, the Court stated:

Branch retention by banks is permissible under § 1823(k)(4). Subsection (k)(4) bolsters, rather than undermines, the RTC's position that retention of branches is permissible. By its terms, the first sentence of (k)(4) does not limit branch retention in those cases in which the surviving entity from the transaction is a bank. It contains, however, an ambiguity. As is readily apparent, "savings association" is used three times in § 1823(k)(4). The first time it appears, in the first clause of the first sentence, it clearly refers to the pre-transaction entity, while the third time it appears, in the second sentence, it unambiguously refers to the post-transaction entity. Nothing in either the language of the statute or the legislative history, however, discloses which use Congress intended for the second clause of the first sentence. The RTC permissibly interprets the reference in the second clause of the first sentence of § 1823(k)(4) as the pre-transaction entity. Accordingly, the statute expressly permits the resulting institution, whether a bank or thrift subsidiary, to retain and operate whatever branches are acquired through the emergency transaction. This reasonable interpretation of the statute by the agency charged with its implementation is entitled to "considerable weight" and must be upheld so long as it is not "contrary to clear congressional intent." *Chevron,* 467 U.S. at 844 [104 S.Ct. at 2782–83].

*Independent Community Bankers,* No. CIV. 90–0532–SC, slip op. at 10–11. This Court agrees with the New Mexico District Court's conclusion that the first time the term "savings association" is used, it is referring to the pre-acquisition entity and that the third time that term is used, it is referring to the post-acquisition entity. However, this Court cannot come to the same conclusion as the New Mexico District Court regarding the meaning to be attached to the second, and in this case operative, time that the term "savings association" is used in Section (k)(4). The

New Mexico District Court concluded the term "savings association" was ambiguous enough that the RTC's interpretation of it as the post-transaction entity was permissible. That being the case, the Court concluded the RTC's interpretation, and, thus, its override powers, could not be disturbed pursuant to the rule laid down by the United States Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In *Chevron,* the Supreme Court held:

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

467 U.S. at 843–44, 104 S.Ct. at 2782.

This Court, however, cannot find the RTC's interpretation plausible because it would render useless the portion reading, "a savings association may retain and operate any existing branch or branches or any other existing facilities." Why would the statute provide that an existing savings and loan association, prior to acquisition, "may retain and operate any existing bank or branches", especially in a statute that deals with what happens to branches after a merger? Of course, an existing pre-acquisition savings and loan association can operate and retain its existing branches. FIRREA was not needed to tell us that. It is obvious to this Court that Section (k)(4) means that after an acquisition, existing branches may be retained and operated if they are maintained and operated as branches of a savings association. This Court agrees with the Colorado District Court that they cannot be retained and operated as branches of the acquiring bank.

The parties directed the Court to various references which they purport demonstrate clear "legislative history" in support of their positions. As is often the case with "legislative history", it is inconclusive and the Court finds it to be of no benefit here.[3]

The Court reaches this decision without reference to the provisions of the McFadden Act, 12 U.S.C. § 36 (1989), which limits branch banking by national banks in accordance with the laws of the state in which they are located. The RTC argues that 12 U.S.C. § 36 does not prevent its Override Rule because there are other sources of branching authority. The RTC points, for instance, to 12 U.S.C. § 1823(f). However, that section is clearly limited by its opening paragraph to acquisition by an out-of-state bank, savings association or holding company, which Worthen is not. The Court thinks that the point, more properly, is not that there are other sources of branching authority, but rather that the limitation on branching authority in 12 U.S.C. § 36 is applicable only to branches which are created pursuant to that section. This Court does not think that it is at all clear that the branches Worthen would be operating under the RTC Override would be created pursuant to 12 U.S.C. § 36. Of course, if the Court is incorrect in this conclusion, then 12 U.S.C. § 36 would be additional, and even clearer, reason to find that the RTC has overstepped its authority in issuing the Override Rule. There is no language in FIRREA which attempts to repeal or limit the language of 12 U.S.C. § 36.

In coming to this decision, this Court is not unaware of the broad discretion that is to be afforded agencies of the United States government in carrying out their legislative mandates. As noted by the New Mexico decision, that rule is forcefully stated in *Chevron.* At the same time, the Court is equally convinced that in this case RTC, in issuing its Override Rule, clearly overstepped its authority pursuant to the language of the statute under which it was acting. *See Federal Labor Relations Authority v. Aberdeen Proving Ground*, 485 U.S. 409, 414, 108 S.Ct. 1261, 1263, 99

---

**3.** The Commissioner has raised the issue of the constitutionality of Section (k)(1) pursuant to the Tenth Amendment. Because of the Court's decision here, it is not necessary to reach this constitutional issue.

L.Ed.2d 470 (1988); *Bethesda Hospital Association v. Bowen*, 485 U.S. 399, 404–406, 108 S.Ct. 1255, 1258–60, 99 L.Ed.2d 460 (1988); *Board of Governors of the Federal Reserve System v. Dimension Financial Corporation*, 474 U.S. 361, 368, 106 S.Ct. 681, 685–86, 88 L.Ed.2d 691 (1986); *Arkansas Poultry Federation v. United States Environmental Protection Agency*, 852 F.2d 324, 325 (8th Cir.1988). There is no doubt that the RTC can more effectively carry out its mandate if it is allowed to override state law and receive better bids from purchasers. Congress, had it so intended, could have given such authority to the RTC. However, the RTC cannot by regulation amend FIRREA to add provisions that are not there, any argument *ab inconvenienti* to the contrary, notwithstanding. Accordingly, plaintiff's and intervenor Independent Bankers' request for declaratory and injunctive relief is granted.[4]

It is, therefore, ORDERED that the Override Regulation, 12 C.F.R. § 1611.1, insofar as it would override state laws on branch banking, is declared unlawful, null and void for having been issued in excess of RTC's authority. It is further ORDERED that defendants are enjoined from approving the establishment of branch banks in violation of state branch banking laws. The motions to dismiss filed on behalf of defendants FDIC and the Comptroller are denied. Any other pending motions are rendered moot by the entry of this Order. A separate Judgment shall be entered in accordance with this opinion.

### JUDGMENT

Pursuant to the Memorandum and Order entered this date, judgment is entered in favor of plaintiff, Arkansas State Bank Commissioner, and intervenor Arkansas Independent Bankers Association on their complaints for declaratory and injunctive relief. The Override Regulation, 12 C.F.R.

§ 1611.1 (May 24, 1990), is declared unlawful, null and void, and defendants are enjoined from approving the establishment of branch banks in violation of state branch banking laws.

---

**4.** Defendants called into question the Court's power to issue injunctive relief in light of 12 U.S.C. § 1821(j) which provides that, "[e]xcept as provided in this section, no court may take any action ... to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." This Court cannot, however, accept the proposition that this prohibition is applicable where a court has found that the RTC exceeded its authority in the exercise of its functions.