**Stanley Francis CERMAK, Sr. and Raymond Cermak, Sr., Plaintiffs–Appellants,**

v.

**Bruce BABBITT, Secretary of the Interior, Defendant–Appellee.**

No. 00–1098.

United States Court of Appeals, Federal Circuit.

Dec. 13, 2000.

Lawrence H. Crosby, Crosby & Associates, of St. Paul, MN, argued for plaintiffs-appellants.

David J. Lazerwitz, Attorney, Environmental & Natural Resources Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Lois J. Schiffer, Assistant Attorney General; and David C. Shilton, Attorney.

Before MAYER, Chief Judge, LOURIE, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Stanley Francis Cermak, Sr. and Raymond Cermak, Sr. (collectively, the "Cermaks") are, respectively, the son and grandson of John Cermak. In 1944, the Department of the Interior (the "Department") assigned two parcels of land to John Cermak through the issuance of two Indian Land Certificates. After John Cermak's death in 1989, the Department canceled the land assignments. The Department asserted that the Cermaks have no rights in the parcels and that the Department instead holds the land in trust for the Shakopee Mdewakanton Sioux Community.

The Cermaks sued the Department in the United States District Court for the District of Minnesota ("district court" or "court"), claiming that the Department had wrongfully deprived them of their rights in the two parcels of land. The Cermaks' complaint asserts that they have a right to occupy the land described in the Certificates and asks the court to order the Department to place the land into an Indian Land Certificate in their favor. The Cermaks also seek, in the alternative, damages in excess of $50,000 for the taking of their property.

The Department challenged the district court's jurisdiction over the Cermaks' claims. The Cermaks' complaint cites 28 U.S.C. §§ 1346 and 1353 as the basis for the district court's jurisdiction over their claims. The district court determined that 28 U.S.C. § 1346 does not confer it with jurisdiction over the claims because the Cermaks were seeking more than $10,000 in damages. *Cermak v. Babbitt*, No. 98–1248, slip op. at 5 (D.Minn. July 12, 1999) (order). The court also determined that 28 U.S.C. § 1353 does not confer it with jurisdiction over their claims because their claims do not concern an allotment of land, as required by that statute. *Id.*, slip op. at 6. The court therefore held that it did not

have jurisdiction over the Cermaks' claims, and transferred the case to the United States Court of Federal Claims. *Id.* The Cermaks appealed the transfer to the United States Court of Appeals for the Eighth Circuit, which transferred the appeal to this court. *Cermak v. Babbitt*, No. 99–3135 (8th Cir. Nov. 17, 1999) (judgment). We have jurisdiction over the Cermaks' appeal pursuant to 28 U.S.C. § 1292(d)(4)(A).

We agree with the district court that neither 28 U.S.C. § 1346 nor 28 U.S.C. § 1353 confer it with jurisdiction over the Cermaks' claims. As the district court noted, § 1346 confers district courts with jurisdiction over claims against the United States that do not exceed $10,000. Because the Cermaks assert that they have been damaged in excess of $50,000, § 1346 does not provide a basis for the district court's jurisdiction over their claims. Section 1353 confers district courts with jurisdiction over civil actions "involving the right ... to any allotment of land under any act of Congress or treaty." 28 U.S.C. § 1353. However, because we hold that the Indian Land Certificates at issue did not effect "allotments" of land, this statute also fails to provide a basis for the district court's jurisdiction over the Cermaks' claims. Accordingly, we affirm the district court's order transferring the Cermaks' case to the United States Court of Federal Claims.

## BACKGROUND

### I.

After the Sioux uprising in 1862, Congress terminated the trust status of the Sioux Reservation in Minnesota. *Brewer v. Acting Deputy Assistant Sec'y—Indian Affairs (Operations)*, 10 I.B.I.A. 110, 113–14 (1982). At the same time, it permitted some members of the Mdewakanton Sioux (the "friendly Sioux") to remain in Minnesota. *Id.* at 115. Pursuant to several acts of Congress, the Department purchased land in Minnesota and issued Indian Land

Certificates to certain of the friendly Sioux, including John Cermak. *See id.* at 115–117.

Each Certificate at issue states:

It is hereby certified that John Cermak, a member of the Mdewakanton band of Sioux Indians residing in Minnesota, has been assigned the following described tract of land ... in Scott County, Minnesota, containing 25 acres, more or less.

It is also certified that the said John Cermak and his heirs are entitled to immediate possession of said land, which is to be held in trust, by the Secretary of the Interior, for the exclusive use and benefit of the said Indian, so long as said allottee or his or her heirs occupy and use said land. If said land should be abandoned for two years by the allottee, then said land shall be subject to assignment by the Secretary of the Interior to some other Indian....

It is also declared that this certificate is not transferable, and that any sale, lease, transfer or encumbrance [sic] of the said land, or any part thereof to any person or persons whomsoever, except it be to the United States, and as herein provided, is and will continue to be utterly void and of no effect. It is further declared that said land is exempt from levy, taxation, sale, or forfeiture, until otherwise provided by Congress.

When John Cermak died in 1989, his heirs asked the Department to probate his will. The Department refused, stating that it would probate estates only if the deceased Indian possessed an ownership interest in Indian Trust Lands, and asserting that John Cermak did not possess such an interest in the land at issue. The Department explained that the land encompassed by the Certificates was not individually owned land, but instead was land owned by the Shakopee Mdewakanton Sioux Community (the "Community") and held in trust by the United States for the Community's benefit.

In July of 1990, at the request of the Community, the Department canceled the Certificates that had been issued to John Cermak. The heirs of John Cermak pursued separate challenges of the Department's actions. In May of 1994, Sharon Gitchel, acting as conservator for three of John Cermak's grandchildren, petitioned the Department to place the grandchildren in possession and occupancy of the land. When the Department denied the petition, Gitchel appealed to the Interior Board of Indian Appeals ("IBIA"). The IBIA affirmed the agency's decision, determining that the Certificates did not give John Cermak any inheritable interest in the land. *Gitchel v. Minneapolis Area Director, Bureau of Indian Affairs,* 28 I.B.I.A. 46 (1995).

In July of 1996, Raymond Cermak, Sr. petitioned the Department to reopen the issue of the Cermaks' rights to the land. The Department denied Mr. Cermak's petition, explaining that the Indian Land Certificates conveyed only "life use" rights that could not be inherited. The Department also cited the IBIA decision in *Gitchel* and the IBIA's determination that the land at issue was not individually owned, but was held in trust for the Community. Mr. Cermak appealed this decision to the IBIA, which dismissed the appeal.

## II.

The Cermaks brought this suit in the district court on April 27, 1998. Their complaint sets forth two causes of action. The first cause of action alleges that the Department "breached its trust responsibility" to the Cermaks by not allowing them full use of the land described in the Certificates. The Cermaks assert that this breach deprived them of their land "without compensation and in derogation of the explicit language" of the Certificates. The Cermaks allege that they were harmed "in excess of $50,000" by the loss of their rights in the land. The second cause of action alleges that the Department violated the Takings Clause of the

United States Constitution by participating in the taking of a property interest from the Cermaks without providing compensation. The Cermaks assert that the Department should be ordered to place the land at issue into an Indian Land Certificate in their favor or, in the alternative, to compensate the Cermaks for the loss of the use of the land.

The Department moved to dismiss the Cermaks' complaint for lack of jurisdiction. In considering this motion, the court determined that the gravamen of the Cermaks' complaint is that the Department has "unlawfully taken their property and given it to the Community." *Cermak*, slip op. at 3. The court noted that the Cermaks sought an Indian Land Certificate in their favor or, alternatively, compensation for losses which they value at more than $50,000. *Id.* at 4.

The court noted that 28 U.S.C. § 1346 gives it jurisdiction over certain takings claims against the United States. *Id.* However, the court determined that there are two relevant limitations on the takings claims which it may entertain. *Id.* First, the relief available is limited to just compensation, and does not include equitable remedies. *Id.* Second, regional district courts do not have jurisdiction over claims for compensation greater that $10,000; those claims must be brought in the Court of Federal Claims. *Id.* at 4–5. In view of these limitations, the court held that § 1346 does not give it jurisdiction over the Cermaks' claim for injunctive (equitable) relief or for compensation in excess of $50,000. *Id.* at 5.

The court also considered whether 28 U.S.C. § 1353 gives it jurisdiction over the Cermaks' claims. This statute provides, in relevant part, that "[t]he district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty." 28 U.S.C. § 1353. The court determined that the Department has consistently taken the position that lands held under Indian Land Certificates were never "allotted" and, in 1980, became "tribal lands held by the Department in trust." *Id.* at 5 (citing *Brewer*, 10 I.B.I.A. at 118–19). The court stated that it was obligated to "adopt the Department's reasonable interpretation of the statutory scheme it has been charged ... with enforcing." *Id.* The court therefore held that the Cermaks' Certificates did not effect allotments and, consequently, that § 1353 does not confer it with jurisdiction over their claims. *Id.* at 6.

Instead of dismissing the Cermaks' case, the district court transferred the case to the Court of Federal Claims, in accordance with the parties' suggestion. *Id.* The Cermaks appealed the transfer to the Court of the Appeals for the Eighth Circuit, which transferred the appeal to this court pursuant to the Department's motion. *Cermak v. Babbitt*, No. 99–3135 (8th Cir. Nov. 17, 1999) (judgment). As set forth above, we have jurisdiction pursuant to 28 U.S.C. § 1292(d)(4)(A).

## DISCUSSION

■ We review a district court's decision to transfer a case to the Court of Federal Claims for lack of subject matter jurisdiction *de novo*. *James v. Caldera*, 159 F.3d 573, 578 (Fed.Cir.1998). To determine whether the district court has jurisdiction over the Cermaks' claims, we must focus on the language of the Cermaks' complaint. *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997). "[I]t is the plaintiff's statement of the claims that determines whether the case is within the competence of the court." *Id.* As the district court correctly determined, the gravamen of the Cermaks' complaint is that the Department has unlawfully taken their property. The relief requested in the complaint is an Indian Land Certificate issued in their favor, or, alternatively, damages in excess of $50,000.

■ To establish the district court's jurisdiction over their claims against the

United States, the Cermaks must establish both that the district court has subject matter jurisdiction over the claims and that the United States has waived its sovereign immunity with respect to those claims. *Kanemoto v. Reno,* 41 F.3d 641, 643–44 (Fed.Cir.1994). The Cermaks' complaint bases the district court's jurisdiction on 28 U.S.C. § 1346 and 28 U.S.C. § 1353. Although the complaint also makes reference to 28 U.S.C. § 1331, it is well-established that § 1331 "does not by itself operate as a waiver of sovereign immunity," *id.* at 644, and the Cermaks do not rely on this statute in their appeal. Accordingly, the only issue before us is whether § 1346 or § 1353 permits the district court to entertain the Cermaks' claims.

## I.

### Jurisdiction Under 28 U.S.C. § 1346

■■■ Section 1346 provides that district courts have subject matter jurisdiction over certain claims against the United States, including those that are founded on the Constitution. 28 U.S.C. § 1346. This statute, together with the corresponding jurisdictional statute for the Court of Federal Claims, 28 U.S.C. § 1491, also constitutes a waiver of sovereign immunity with respect to the prescribed claims. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). However, this waiver extends only to claims for monetary damages, and does not extend to claims for equitable relief. *Crocker v. United States,* 125 F.3d 1475, 1476 (Fed. Cir.1997). Sections 1346 and 1491, therefore, constitute waivers of sovereign immunity with respect to the Cermaks' claim for damages for the alleged taking of the property described in the Certificates, but do not constitute waivers of sovereign immunity with respect to their claim for injunctive relief—the issuance of an Indian Land Certificate in their favor.

Although the Cermaks cite § 1346 as providing a basis for the court's jurisdiction over their claims, this statute limits the jurisdiction of district courts to claims that do not exceed $10,000. 28 U.S.C. § 1346. Because the Cermaks seek damages greater than $10,000, this statute does not confer the district court with jurisdiction over their claims.

## II.

### Jurisdiction Under 28 U.S.C. § 1353

As set forth above, § 1353 confers district courts with jurisdiction over "any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty." 28 U.S.C. § 1353. The Supreme Court has interpreted the corresponding provision of the General Allotment Act, 25 U.S.C. § 345, as "contemplat[ing] two types of suits involving allotments: suits seeking the issuance of an allotment ... and suits involving the interests and rights of the Indian in his allotment or patent after he has acquired it." *United States v. Mottaz,* 476 U.S. 834, 845, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) (internal quotations omitted); *see also id.* at 844 n. 8, 106 S.Ct. 2224 (referring to 28 U.S.C. § 1353 as the "corresponding provision governing district court jurisdiction"). As noted above, the Cermaks claim that the Department wrongfully deprived them of their rights in the two parcels of land at issue. This claim implicates the second type of suit identified by the Court. As a predicate for this type of suit, there must be an existing allotment.

■■■ The district court determined that § 1353 does not confer it with jurisdiction over the Cermaks' claims because the Indian Land Certificates issued to John Cermak did not effect "allotments." The Cermaks challenge this determination on appeal. The nature of the property interests transferred by the Certificates is a question of law, which we review *de novo. Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366, 1373 (Fed.Cir.2000).

The Cermaks rely on the language of the Certificates themselves to establish that the property interests were allotments. Specifically, the Cermaks cite the Certificates' references to John Cermak as an "allottee" as supporting their contention that the Certificates effected allotments of land. The Cermaks argue that the district court's jurisdiction, as provided in § 1353, should not depend on the Department's definition of the term "allotment." The Cermaks also argue that, even if the Certificates did not effect formal allotments, the property rights transferred to John Cermak were devisable and inheritable.

In response, the Department argues that "allotment" is a term of art that has a very specific meaning. Specifically, an allotment involves the "selection of specific land awarded to an individual allottee from a common holding." *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 142, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Under the General Allotment Act of February 8, 1887, 24 Stat. 388 (current version at 25 U.S.C. §§ 331, 334, 339, 341, 342, 348, 349, 354 and 381), "Congress authorized the executive branch to ... allot to individual Indians substantially all reservation lands ... suitable for agricultural purposes." *County of Thurston, Neb. v. Andrus,* 586 F.2d 1212, 1218 (8th Cir.1978). "Under this system[,] the United States retained legal title to each parcel of allotted land as trustee for the individual Indian allottee." *Id.* "The Indian's beneficial interest in the property was recorded on a trust patent." *Id.* At the end of the trust period, the Department could issue a patent in fee simple to the allottee. *Id.* at 1219.

The Department argues that the Indian Land Certificates issued to John Cermak could not have effected allotments because Congress terminated the allotment program in 1934, ten years before the Certificates were issued. *See* 25 U.S.C. § 461 ("[A]fter June 18, 1934, no land of any Indian reservation ... shall be allotted in severalty to any Indian."). The Depart-

ment also argues that it has consistently held that Indian Land Certificates such as those issued to John Cermak did not effect allotments. *See Brewer,* 10 I.B.I.A. at 118 (stating that "[t]he Department's position concerning these lands has ... consistently been that they were ... never allotted"). The Department explains that the lands at issue were acquired pursuant to appropriation acts that authorized the Secretary of the Interior ("Secretary") to buy land for the benefit of certain Mdewakanton Sioux Indians and that gave the Secretary discretion to determine how the appropriated funds should be expended. *See* Act of June 29, 1888, 25 Stat. 217, 229; Act of March 2, 1889, 25 Stat. 980, 992; Act of August 19, 1890, 26 Stat 336, 349. The Department argues that when the Secretary authorized the issuance of Indian Land Certificates to assign rights in these lands, he intended that they convey rights of temporary use and occupancy, not permanent rights in the land itself. The Department argues that this policy is different from that behind the General Allotment Act, which provided for the eventual transfer of title to the individual Indian allottees.

We have carefully considered the Cermaks' arguments. We are persuaded, however, that the Indian Land Certificates issued to John Cermak did not effect allotments. The land at issue was purchased by the Secretary of the Interior with funds appropriated by Congress with instructions that the Secretary expend the funds "in the purchase, in such manner as in his judgment he may deem best, of agricultural implements, cattle, horses, and lands." Act of June 29, 1888, 25 Stat. 217, 229; *see also* Act of March 2, 1889, 25 Stat. 980, 992 (appropriating $10,000 "to be expended by the Secretary ... in the purchase, as in his judgment he may think best, of such lands, agricultural implements, seeds, cattle, horses, food, or clothing"); Act of August 19, 1890, 26 Stat 336, 349 (appropriating $8,000 "to be expended by the Secretary ..., as in his judgment he may think best,

for such lands, agricultural implements, buildings, seeds, cattle, horses, food, or clothing"). Congress did not specify how the Secretary should dispose of the land purchased with the appropriated funds, other than requiring that the funds be used "[f]or the support of [certain members of] the Mdewakanton [sic] band of Sioux Indians." Act of June 29, 1888, 25 Stat. 217, 229; Act of March 2, 1889, 25 Stat. 980, 992; Act of August 19, 1890, 26 Stat 336, 349. The record reveals that the Secretary elected to convey only temporary use and occupancy rights to individual Indians, and used Indian Land Certificates to effect the assignment of these rights. Letter from E.B. Meritt, Assistant Commissioner, to the Secretary of the Interior (Sept. 30, 1915). The record also reveals that, as of 1915, the Department was awaiting legislation that would authorize the allotment of land that had been assigned by Indian Land Certificates. *Id.* However, such legislation never was enacted.[1] *See Brewer,* 10 I.B.I.A. at 118. Because Congress provided the Secretary with discretion to determine how best to use the land at issue to benefit the Indians, and because the Secretary chose not "to dispose of any permanent interest in [the] lands," Letter from E.B. Meritt, Assistant Commissioner, to the Secretary of the Interior, *supra,* we hold that the Indian Land Certificates did not effect allotments.

The Certificates' references to John Cermak as an "allottee" do not compel a determination that the Certificates effected allotments. Although the Certificates use the term "allottee," they do not state that the land has been "allotted," but instead use the more general term "assigned." Additionally, the Certificates lack the language that was required by the General Allotment Act to appear in trust patents issued thereunder, such as a statement that the United States is holding the land in trust for the allottee for a limited trust period and will transfer the land to the allottee in fee at the end of the trust period. *See* 25 U.S.C. § 348.

Congress' most recent legislation regarding this land supports our determination that it was never allotted. In the Act of December 19, 1980, Pub.L. No. 96–557, 94 Stat. 3262, Congress provided that "all right, title, and interest of the United States in those lands ... which were acquired and are now held by the United States for the use or benefit of certain Mdewakanton Sioux Indians ... are hereby declared to hereafter be held by the United States ... in trust for the Shakopee Mdewakanton Sioux Community of Minnesota." Congress could not have changed the trust status of the land if it had been allotted to individual Indians. *See Brewer,* 10 I.B.I.A. at 118 (noting that the enactment of the 1980 Act reflected Congress' approval of the Department's position that the land at issue had not been allotted).

In view of our determination that the Certificates issued to John Cermak did not effect allotments of land, we hold that 28 U.S.C. § 1353 does not provide a basis for the district court's jurisdiction over the Cermaks' claims.[2]

### III.

### The Cermaks' Claim for Equitable Relief

The Cermaks argue that their case should not be transferred to the Court of Federal Claims because that court does not have jurisdiction to order the equitable relief they seek—the return of their prop-

---

1. Although the Department cites 25 U.S.C. § 461 as prohibiting the allotment of the land at issue, no evidence of record indicates that the land was reservation land encompassed by that statute. We therefore do not rely on § 461 to support our determination that the Certificates did not effect allotments.

2. In holding that the Indian Land Certificates did not effect allotments of land as that term is used in § 1353, we do not intend to imply that the Certificates did not transfer an interest in land that was devisable and inheritable. We leave the resolution of that issue to the Court of Federal Claims.

erty. The Government responds by arguing that the transfer to the Court of Federal Claims is proper because that court has exclusive jurisdiction over the Cermaks' claim for monetary damages in excess of $10,000, and because the Cermaks have not cited any waiver of sovereign immunity that might permit the district court to entertain their claim for equitable relief.

If the district court had jurisdiction over the Cermaks' claim for equitable relief, it might have been possible to split the Cermaks' case between the Court of Federal Claims, which has exclusive jurisdiction over their claim for monetary damages, and the district court, which would have exclusive jurisdiction over their claim for equitable relief. *See United States v. County of Cook, Ill.,* 170 F.3d 1084, 1089 (Fed.Cir.1999) (noting that "suits against the United States may be brought in the district courts in some circumstances and in the Court of Federal Claims in other circumstances," and holding "that [28 U.S.C.] § 1631 allows for the transfer of less than all of the claims in a civil action to the Court of Federal Claims"). However, the Cermaks have not pointed to any authority which would permit us to conclude that the district court* has jurisdiction over their claim for equitable relief. As discussed above, in order for a court to have jurisdiction over a claim against the United States, the United States must have waived its sovereign immunity with respect to that claim. However, none of the statutes cited by the Cermaks (28 U.S.C. §§ 1331, 1346, and 1353) constitute a waiver of sovereign immunity with respect to their claim for equitable relief. Without a basis for holding that the district court has jurisdiction over their equitable claim, we must reject the Cermaks' argument that the transfer to the Court of Federal Claims is improper merely because the Court of Federal Claims cannot award the equitable relief they seek.

At oral argument for this appeal, there was some discussion as to whether the Cermaks might have been able to obtain equitable relief if they had challenged the Department's actions in a claim brought under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 702 ("A person suffering a legal wrong because of agency action ... is entitled to judicial review thereof."); 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court ... [is] subject to judicial review."). It appears that the Cermaks could have sought review of the IBIA decision by bringing an APA action in the district court. *See, e.g., Smith v. Babbitt,* 96 F.Supp.2d 907 (D.Minn.2000) (considering a challenge to an IBIA decision under the APA). Moreover, it appears that, if such an APA action had been brought, the district court may have been able to order the equitable relief the Cermaks seek. *See* 5 U.S.C. § 706 ("The reviewing court shall ... set aside agency action ... found to be [unlawful]."); *see also Youpee v. Babbitt,* 67 F.3d 194 (9th Cir.1995) (affirming the district court's award, in an APA action, of injunctive relief against the Department of the Interior). However, because the Cermaks did not pursue a claim under the APA, the district court lacks jurisdiction over their case. Thus, the Cermaks will be limited to seeking monetary damages when this case proceeds on the merits in the Court of Federal Claims.

## CONCLUSION

For the foregoing reasons, the order of the district court transferring this case to the court of Federal Claims is affirmed.

*AFFIRMED*

COSTS

Each party shall bear its own costs.