**Stanley F. CERMAK, Sr., and Raymond Cermak, Sr., acting individually and under a power of attorney for Stanley F. Cermak, Sr., Plaintiffs,**

v.

**Gale NORTON, Secretary of the United States Department of the Interior, and her Agents, Assigns and Successors in office, and the United States of America, through its Department of the Interior and the Bureau of Indian Affairs, Defendants.**

No. CIV.98–1248DSDSRN.

United States District Court,
D. Minnesota.

June 22, 2004.

Lawrence H. Crosby, Jay D. Olson, and Crosby and Associates, St. Paul, MN, counsel for plaintiffs.

D. Gerald Wilhelm, Assistant U.S. Attorney, Minneapolis, MN, counsel for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court upon defendants' motion to dismiss, or in the alternative, for summary judgment. Also before the court is plaintiff's cross-motion for summary judgment. For the following reasons, defendants' motion for summary judgment is granted and plaintiff's motion is denied.

## BACKGROUND

The tortuous history of this case began in 1944, when the U.S. Department of the Interior issued Indian Land Certificates 64 and 65 to John Cermak, an Indian. Each certificate represented twenty-five acres of land in Scott County, Minnesota. The certificates indicate that "the said John Cermak and his heirs are entitled to immediate possession of said land, which is to be held in trust, by the Secretary of the Interior, for the exclusive use and benefit of the said Indian, so long as said allottee or his heirs occupy and use said land." (Pls.' Exs. Supp. Pls.' Mot. Summ. J. Ex. 41.)

In 1980, Congress passed Pub.L. No. 96–559, placing all "right, title, and interest" in the lands represented by the certificates in trust for the benefit of the Shakopee Mdewankanton Sioux Community of Minnesota (the "Community"). Pub.L. No. 96–559, 94 Stat. 3262. Section 3 of the Act states that "[n]othing in this Act shall (1) alter, or require the alteration, of any rights under any contract, lease, or assignment entered into or issued prior to enact-

ment of this Act, or (2) restrict the authorities of the Secretary of the Interior under or with respect to any such contract, lease, or assignment." *Id.* at § 3.

John Cermak died in 1989. In his will, he devised to his son, Edward Cermak, "the interest that I may have in the real property granted to me by Indian Land Certificates number 64 and number 65." As executor of the will, Edward Cermak requested that the Bureau of Indian Affairs ("BIA") begin probate proceedings relative to the testamentary conveyance. (Defs.' Exhibits Supp. Defs.' Mot. Dismiss at Ex. 9 ("Cermak AR"), § VIV[sic] [1], Felix Letter of Jun. 19, 1989.) The BIA refused, however, claiming that it lacked probate jurisdiction because the land assignments were held in trust for the Community, rather than for John Cermak and his heirs. (Cermak AR § VIII.) The agency refused on the basis of its longstanding interpretation of the 1980 Act. (*Id.* at 1–2.) The following year, the BIA cancelled the certificates at the request of the Community. (Cermak AR at §§ V & VI.)

Edward Cermak died in 1992. The conservator for the descendants of Edward Cermak sought possession of the land formerly covered by the certificates. The BIA again refused, reiterating its view that the certificates had conveyed only a life interest to John Cermak. (Cermak AR § IV.) That decision was appealed to the Indian Board of Interior Appeals ("IBIA") by certain of John Cermaks' descendants. *See Gitchel v. Minneapolis Area Director*, 28 IBIA 46 (1995) (appended at Cermak AR § III). However, the plaintiffs in the present action did not participate in the *Gitchel* action.

In 1996, plaintiff Raymond Cermak, Sr., (hereafter Raymond Cermak) son of Ed-

---

1. The Table of Contents to Defendants' Exhibits shows this document at Ex. 9, § IX. The tabbed exhibit submitted to the court is incorrectly marked Ex. 9, § VIV.

ward Cermak, requested that the area director of the BIA reissue the certificates and grant possession to him and other members of the Cermak family. (Cermak AR § III, Raymond Cermak Letter of Jun. 27, 1996.) Larry Morrin, the Acting Area Director ("AAD") denied the request in a letter dated October 2, 1996. (Cermak AR, appended to TOC.) Raymond Cermak appealed the AAD's decision to the IBIA. *See Cermak v. Acting Mpls. Area Dir. BIA*, 32 IBIA 77, 78 (1998) (appended to Defs.' Exs. Supp. Defs.' Mot. Dismiss, Ex. 10).[2] The IBIA dismissed the action, finding that Raymond Cermak lacked standing to bring the appeal. *See id.* at 78. The IBIA further found that the ultimate issue had already been decided in the *Gitchel* action, which held that John Cermak held only a life interest in the lands, which terminated upon his death. *See id.* at 78 (citing *Gitchel*, 28 IBIA at 47.) The IBIA held that the *Gitchel* decision was res judicata as to Raymond Cermak's claims. *See id.* at 78–80. For those reasons, the IBIA dismissed the appeal.

Plaintiffs initiated the present litigation in 1998. Their complaint alleged a deprivation or taking of an interest in land without just compensation and breach of trust. (Compl. ¶¶ 1, 20 & 23.) Plaintiffs sought reconveyance of the land or damages equal to its value. (*Id.* at 21, 27.) This court found that it lacked jurisdiction over the action, because equitable relief is not available in takings cases and claims for compensation in excess of $10,000 fall within the exclusive jurisdiction of the U.S. Court of Federal Claims.[3] (Order of Jul. 12, 1999 at 3–4.) Rather than dismissing the lawsuit for lack of subject matter juris-

diction, the court transferred the action to the Court of Federal Claims. (*Id.* at 5.)

Plaintiffs appealed the court's transfer order. The Court of Appeals for the Eighth Circuit transferred plaintiffs' appeal to the Court of Appeals for the Federal Circuit. *See Cermak v. Babbitt*, No. 99–3135 (8th Cir. Nov. 17, 1999). In February 2001, that court affirmed this court's order transferring the action to the Court of Federal Claims. *See Cermak v. Babbitt*, 234 F.3d 1356, 1363–64 (Fed.Cir.2000). On September 9, 2002, Judge Hodges of the Court of Federal Claims issued a decision dismissing plaintiffs' Fifth Amendment takings claim as filed outside the statute of limitations. (Mem. Op. of Sept. 9, 2002 at 4–5.) Judge Hodges dismissed plaintiffs' generalized takings claim on the basis of the findings of the BIA and IBIA that plaintiffs lacked any interest in the subject lands. (*Id.* at 6.) Finally, he dismissed the breach of trust action because plaintiffs failed to cite authority to support their claim for money damages stemming from a breach of trust. (*Id.* at 6.)

Despite dismissing all of plaintiffs' claims, Judge Hodges did not enter final judgment terminating the action. Noting that the Federal Circuit Court of Appeals had commented on the possible existence of a cause of action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 et seq., Judge Hodges instead transferred the case back to this court. (*Id.* at 7.)

Plaintiffs filed an amended complaint on January 13, 2003. Plaintiffs bring two causes of action in the amended complaint. They again allege that defendants have

**2.** The IBIA noted that Raymond Cermak's reply brief claimed to be "on behalf of Raymond Cermak, Sr. and Stanley Cermak." *See Cermak*, 32 IBIA 77, n. 1. The IBIA determined that Stanley Cermak was not properly before the agency because he had not been

identified in the earlier request to the AAD or in the initial appeal. *See id.* at 77, n. 1.

**3.** The court also held that 28 U.S.C. § 1353 was not a basis for jurisdiction, because the certificates were not allotments within the meaning of that statute. (*Id.* at 5.)

breached certain trust and contract obligations. (Am.Compl.¶¶ 23–27.) Plaintiffs pray for "equitable redress in this Court so that [they] receive that land at issue or an equitable remedy equal to the value of the two Indian Land Assignments...." (*Id.* ¶ 28.) In the alternative, plaintiffs seek a declaration that defendants have acted arbitrarily, capriciously and contrary to law, and an order requiring defendants to convey the subject lands to them. (*Id.* ¶ 29.)

Plaintiffs' second cause of action simply realleges their takings claims. (*Id.* ¶ 31.) They again demand reconveyance of the lands, other equitable compensation, or transfer of the action back to the court of federal claims for an award of appropriate monetary damages. (*Id.* ¶¶ 33–36.)

Defendants now move to dismiss for lack of subject matter jurisdiction, for judgment as a matter of law, or, in the alternative, for summary judgment.

## DISCUSSION

### I. Applicable Standards

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss for lack of subject matter jurisdiction. Moreover, the court is required to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Fed.R.Civ.P. 12(h)(3).

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *See id.* at 255, 106 S.Ct. 2505. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *See id.* at 322–23, 106 S.Ct. 2548.

### II. The Claims

■ Plaintiffs' claims that defendants have breached a trust or contract duty, and that they have suffered a taking of an interest in land without just compensation, have already been decided and are beyond this court's subject matter jurisdiction. (*See* Mem. Op. of Sept. 9, 2002 at 4–6.) This court has no authority to review the decisions of the Federal Court of Claims. *See* 28 U.S.C. § 1295(a)(3) (vesting exclusive appellate jurisdiction over final decisions of the U.S. Court of Federal Claims in the U.S. Court of Appeals for the Federal Circuit). Thus, the only issue remaining is plaintiffs' assertion that the defendant agencies acted in an arbitrary and

capricious manner. Read broadly, that claim calls for judicial review of agency action pursuant to the APA.

### A. Judicial Review of the Decisions of the Agencies

 Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the scope of such review is limited. The court may "decide relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The court's review is limited to the record before the agency. *See Sierra Club v. Davies,* 955 F.2d 1188, 1192 (8th Cir.1992). The court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under that standard of review the court "must defer to any reasonable interpretation given to [a] statute by the agency charged with its administration." *Ark. Poultry Fed'n v. U.S. Envtl. Protection Agency,* 852 F.2d 324, 325 (8th Cir.1988). An agency acts arbitrarily or capriciously when it fails to consider the relevant matters and there is a "clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The court's sole duty is to determine whether there is a rational connection between the facts and the agency's actions. *See First Nat'l Bank v. Smith,* 508 F.2d 1371, 1376 (8th Cir.1974). Generally, only final agency actions are reviewable under the APA. *See* 5 U.S.C. § 704.

### B. The Agency Actions

#### 1. Transfer and Termination of the Certificates

 Plaintiffs purport to challenge the decision of the BIA that the certificates granted John Cermak only a life interest in the property, the AAD's refusal to reissue certificates in their favor, and the IBIA's dismissal of Raymond Cermak's appeal of the AAD's decision. Judicial review of administrative action is limited by the doctrine of exhaustion of remedies. *See United States v. Bisson,* 839 F.2d 418, 420 (8th Cir.1988). In most cases, the requirements of final agency action and exhaustion of remedies require persons aggrieved by an agency's actions to seek redress through the agency's procedures before initiating judicial action. That allows the agency to apply its own expertise, correct its own errors and fully develop the administrative record prior to judicial review. *See United States v. Bisson,* 646 F.Supp. 701, 706 (D.S.D.1986). Although there are limited exceptions to the exhaustion requirement, their application lies within the discretion of the district court. *See Bisson,* 839 F.2d at 419–20; *Runs After v. United States,* 766 F.2d 347, 352 (8th Cir.1985).

 Plaintiffs' APA action is barred as to the BIA's 1989 transfer of the beneficial interest to the Community and subsequent cancellation of the certificates. Plaintiffs failed to directly appeal those decisions and the time for appeal has run, as has the applicable statute of limitations for judicial review. 28 U.S.C. § 2401(a). Because plaintiffs failed to exhaust the available administrative remedies and the time for appeal has run, they cannot now challenge the agency's decision under the APA.

 Raymond Cermak did appeal the AAD's 1996 refusal to reissue certificates in plaintiffs' favor to the IBIA. Defendants argue that the current APA action was

filed more than six years after the AAD issued the October 2, 1996, letter and is outside the six-year statute of limitations. Where administrative review is mandatory, participation in that process tolls the statute of limitations. *See Lipp v. United States,* 301 F.2d 674, 675 (Cl.Ct.1962). Conversely, where appeal to an administrative body is merely permissive, the statute of limitations is not tolled. *See id.* at 675.

In this case, it is not clear that appeal to the IBIA was mandatory. However, assuming that it was, a subsequent APA review by this court is limited to two issues. First, the court must determine whether the AAD's denial of plaintiffs' request that he reissue certificates in their favor was arbitrary or capricious. Second, the court must make the same determination regarding the IBIA's dismissal of Raymond Cermak's appeal.

■■■ The court's review is limited to the record before agency. *See Davies,* 955 F.2d at 1192. The court must consider the actions taken by the agency and the reasons given, and it may not contravene the agency's decision merely because the court might have decided the matter differently. *See Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. 814. The court may reverse the agency only if its decision was "not based on a consideration of the relevant factors" or there was a "clear error of judgment." *Downer v. United States by and Through U.S. Dep't of Agric. and Soil Conservation,* 97 F.3d 999, 1002 (8th Cir. 1996).

### 2. The AAD's Refusal To Reissue the Certificates

Plaintiffs have argued unsuccessfully throughout the lawsuit that the 1980 Act did not alter any rights existing prior to its passage. (Pls.' Mem. Supp. Pls.' Mot.

Summ. J. at 3–4, 12, 16 & 21.) (citing Pub.L. 96–557, 94 Stat. 3262, § 3.) They contend that John Cermak's possessory interest was both assignable and inheritable. (Pls.' Resp. Defs.' Mot. Dismiss at 2.) Plaintiffs' argument overlooks that part of Section 3 which states that nothing included therein shall "restrict the authorities of the Secretary of the Interior under or with respect to any such contract, lease, or assignment." Pub.L. 96–557, 94 Stat. 3262 § 3.

■■■ The AAD based his decision not to reissue certificates in favor of plaintiffs on the agency's interpretation of the Act of 1863, whereby land was to be set aside for assignment or allotment to certain Indians, and its ruling in *Gitchel.* (Cermak AR Ex. 9, TOC.) The agency has consistently asserted that certificate holders such as John Cermak did not receive allotments and were not beneficial owners of a possessory interest in allotted trust lands. *See Brewer v. Acting Deputy–Indian Affairs,* 10 IBIA 110 (1982). Rather, such lands were held in trust for the use of certain Indians. *See id.* at 116. The Secretary of the Interior did not grant any permanent interest in the lands, *pending further legislation. See id.* at 117 (emphasis added). The only "further legislation" was the Act of 1980, which transferred the beneficial interest to the Community. *See* Pub.L. 96–557, 94 Stat. 3262. The IBIA reached the same conclusion in *Gitchel. See Gitchel,* 28 IBIA at 46–47. Accordingly, the IBIA's position has consistently been that occupants of lands under such certificates hold only beneficial life interests.

The AAD considered the relevant factors and his conclusions were based on prior IBIA decisions which represent a reasonable interpretation of the Acts of 1863 and 1980. Therefore, the AAD's refusal to reissue certificates in favor of plaintiffs was not arbitrary or capricious.[4]

---

**4.** Moreover, the AAD's decision was not arbitrary and capricious in light of the fact that

### 3. The IBIA's Dismissal of the Appeal

The IBIA dismissed Raymond Cermak's appeal on two grounds. First, the agency held that he lacked standing because he failed to present evidence that he was an heir of John Cermak. *See Cermak*, 32 IBIA at 78. Second, the IBIA held that the appeal was barred by the res judicata effect of the *Gitchel* decision. *See id.* at 79–80. Plaintiffs assert that there was no real controversy about Raymond Cermak's status as grandson and heir of John Cermak. Second, plaintiffs contend that because they were not in privity with the *Gitchel* appellants, their claims are not barred by the doctrine of res judicata.[5]

It appears from the record that Raymond Cermak presented no evidence of his relationship to John Cermak in his appeal. *See id.* at 78. The IBIA cited agency precedent requiring that a tribal member asserting an interest in assigned land "begin by showing that he/she is in fact the legally recognized assignee." *Id.* at 78 (citing *Candelaria v. Sacramento Area Dir.*, 27 IBIA 137, 142 (1995)). Therefore, the IBIA's conclusion that Raymond Cermak lacked standing to bring the appeal was not arbitrary or capricious.

The same is true of the agency's application of the doctrine of claim preclusion. Blood relatives of Raymond and Stanley Cermak, alleging to have the same interest in the land, based on the same theory of testamentary succession, had brought the same claims before the agency and failed. *See Cermak*, 32 IBIA at 78–80 (citing *Gitchel*, 28 IBIA at 49). Plaintiffs' contention that they are not in privity with the *Gitchel* litigants misses the mark because the agency is entitled to apply claim preclusion in any reasonable manner. *See First Nat'l Bank*, 508 F.2d at 1376. The IBIA offered a carefully reasoned analysis of the question of privity. *See Cermak*, 32 IBIA at 79. It reviewed the issue, relative to claim preclusion, as a matter of first impression. *See id.* at 79. The fact that this court might have reached a different conclusion is not a sufficient basis to reverse the agency. *See Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. 814. Finally, as for the true underlying issue, the IBIA considered the relevant factors and decided, consistent with its decisions in *Brewer* and *Gitchel*, that there was simply no remaining interest in the land for plaintiffs to inherit after John Cermak's death.

## CONCLUSION

Accordingly, based on the file, record, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment [Docket No. 39] is granted.

2. Plaintiffs' motion for summary judgment [Docket No. 43] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

the BIA and IBIA lacked authority to reissue Indian Land Certificates in any case.

**5.** Plaintiffs fail to respond to the IBIA's assertion that Stanley Cermak lacked standing because he had not been a party to the request to the AAD and had not been named in the appeal. *See Cermak*, 32 IBIA at 77 n. 1.