# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1686

———————

Stanley Francis Cermak, Sr.;                 *
Raymond Cermak, Sr.,                         *
                                             *
    Plaintiffs - Appellants,             *
                                             *
                                             *   Appeal from the United States
v.                                           *   District Court for the
                                             *   District of Minnesota.
United States of America, through its        *
Department of Interior, Bureau of            *
Indian Affairs,                              *
                                             *
    Defendants - Appellees,              *
                                             *
-------------------------------------------- *
Shakopee Mdewakanton Sioux                   *
Community,                                   *
                                             *
    Amicus on Behalf of Appellees.       *

———————

Submitted: November 15, 2006
Filed: February 28, 2007

———————

Before LOKEN, Chief Judge, LAY[*] and MELLOY, Circuit Judges.

———————

---

[*]The HONORABLE DONALD P. LAY assumed permanent disability retirement status on January 3, 2007. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. R. 47E.

LOKEN, Chief Judge.

In 1944, the Bureau of Indian Affairs (BIA) issued Indian Land Certificates 64 and 65, assigning the right to possess fifty acres of Indian trust land in Scott County, Minnesota, to "John Cermak and his heirs . . . for the exclusive use and benefit of [Cermak] so long as [Cermak] or his . . . heirs occupy and use said land." In this action, John Cermak's son Stanley and grandson Raymond seek to enforce rights as heirs under the Certificates. The BIA denied this claim, and the Interior Board of Indian Appeals (IBIA) affirmed. The district court[1] upheld the final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, and transferred any remaining non-APA claims to the Court of Federal Claims for further proceedings. Stanley and Raymond Cermak appeal. We affirm.

## I. Background

Between 1888 and 1890, Congress appropriated funds to purchase land for the benefit of Mdewakanton Sioux and other Indians who remained in Minnesota after the Sioux Uprising of 1862. For some years, the Commissioner of Indian Affairs conveyed fee title to these lands to eligible Indians. But in 1904, the Commissioner began issuing Indian Land Certificates as a way of assigning rights of occupancy and use to individual Indians while retaining fee title in the United States. A 1915 letter from the Assistant Commissioner to the Secretary of the Interior explained that these Certificates passed no "vested interest . . . which requires any determination of the heirs upon the death of such occupants." Rather, upon the death of a Certificate holder, the agency would reassign the land "to the Mdewakanton Sioux Indian who appears to be most equitably entitled to have the temporary use and occupancy of it."

---

[1]HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota.

Some Certificates, including those issued to John Cermak, assigned occupancy and use rights to land in Scott County to members of what is now the Shakopee Mdewakanton Sioux Community ("the Community").[2] In 1980, Congress placed the federal government's "right, title, and interest" in those lands in trust for the benefit of the Community, subject to "any contract, lease, or assignment entered into or issued prior to enactment of this Act." Pub. L. No. 96-557, §§ 1(1), 3, 94 Stat. 3262 ("the 1980 Act"). After this transfer, when a Certificate expires or is properly cancelled, the Community (not the BIA) determines how the land will be used in the future for the benefit of its members.

John Cermak died in 1989 leaving a will that devised to his son, Edward, "the interest that I may have" in the land assigned by Certificates 64 and 65. The BIA refused to probate John's will, ruling that its probate authority is limited to a deceased Indian's ownership interest in Indian Trust lands, that "previous administrative decisions" extinguished any inheritance rights in the Certificates, and that the 1980 Act had transferred beneficial ownership of the land to the Community. Edward Cermak did not appeal or seek judicial review of this ruling. At the Community's request, the BIA then cancelled Certificates 64 and 65.

Edward Cermak died in May 1992. In 1994, Edward's minor children asserted a claim to their interest as "heirs" in the Certificates. The BIA rejected this claim, again ruling that the Certificates conveyed no inheritable interest, that any "use rights" expired with John Cermak's death, and that the 1980 Act transferred all beneficial interests to the Community. The children filed an administrative appeal. The IBIA affirmed this decision as well as the BIA's 1989 refusal to probate John Cermak's will. Gitchel v. Minneapolis Area Director, 28 IBIA 46, 48-49 (1995). Edward's children did not seek judicial review of this final agency action.

---

[2]For reasons not germane to this appeal, the Shakopee Mdewankanton Sioux are referred to as a Community rather than a Tribe or a Band.

Up to this point, Stanley and Raymond Cermak had taken no action other than to write the BIA in 1990 seeking information and to publish on the day of Edward's death a letter addressed "To Whom It May Concern" advising that they "intend to lay claim" to the land assigned in Certificates 64 and 65. In 1996, following the Gitchel decision, Raymond on behalf of the "Cermak family" requested that the BIA "reopen the land issue based on new evidence." The BIA refused to do so in a letter ruling stating that the Certificates "provided only life use rights to John and Edward Cermak . . . which were extinguished by the death of the certificate holder."

Raymond appealed this BIA ruling to the IBIA, as authorized by 43 C.F.R. § 4.331, stating for the first time in a reply brief that the appeal was also filed on behalf of Stanley. The IBIA dismissed the appeal on the grounds that (i) Stanley Cermak was not named in the notice of appeal and was therefore not a party to the appeal, see 43 C.F.R. § 4.332(a), (ii) Raymond lacked standing because he presented no evidence he was an heir of Edward or "would otherwise be entitled to take this land, if it were devisable," (iii) res judicata barred Raymond's claim because he is in privity with the Gitchel claimants and is therefore bound by that decision, and (iv) in any event Raymond's arguments "are not sufficient to cause the Board to reconsider" the Gitchel decision. Cermak v. Acting Area Director, 32 IBIA 77, 80 (1998).

Raymond and Stanley commenced this action in 1998, initially asserting only breach of trust and Takings Clause claims. The district court transferred those claims to the Court of Federal Claims; we affirmed the transfer. Following a later suggestion by the Federal Circuit, see Cermak v. Babbitt, 234 F.3d 1356, 1364 (C.A. Fed. 2000), the Cermaks amended their complaint in the district court to assert the APA claim now under review. Applying the proper APA standard of review, the district court granted the government summary judgment, concluding that any challenge to the BIA's initial transfer of beneficial interest in the land to the Community is time-barred, and the agency's denial of the request to reopen its Gitchel decision was not arbitrary and capricious. Cermak v. Norton, 322 F. Supp. 2d 1009 (D. Minn 2004).

-4-

## II.  Discussion

The IBIA's decision in <u>Gitchel</u> determined that the heirs of John and Edward Cermak inherited no interest in the land assigned by Certificates 64 and 65, that those Certificates were properly cancelled in 1990, and that all beneficial interest in the trust lands has been transferred to the Community.  No one sought timely judicial review of that final agency action.  Accordingly, as counsel for Stanley and Raymond conceded at oral argument, the APA claim reflected in their 1996 letter request to the BIA will only provide them relief as a motion to reopen the <u>Gitchel</u> proceedings; otherwise, the <u>Gitchel</u> decision is dispositive.  Viewing the appeal in this manner, we may put aside the IBIA's res judicata ruling -- an agency decision cannot raise a res judicata bar to a request to reopen that very decision.  However, the IBIA also denied the request to reopen on the merits; it is that decision we must review.

The Interior Department's procedural regulations look with disfavor on requests to reopen or reconsider BIA and IBIA decisions.  They provide that such a request must be made within thirty days of the decision and that reconsideration will be granted "only in extraordinary circumstances."  43 C.F.R. §§ 4.21(d),  4.315(a).  Raymond's request to reopen was submitted more than one year after the <u>Gitchel</u> decision.  But the agency rejected the request on the merits, not as untimely, so we will consider the merits as well.

The IBIA's reluctance to reopen or reconsider its final decisions is consistent with well-established principles of federal administrative law.  Motions to reopen agency proceedings are disfavored, like petitions for rehearing and motions for new trial in judicial proceedings.  See <u>INS v. Abudu</u>, 485 U.S. 94, 107 (1988); <u>ICC v. Bhd. of Locomotive Eng'rs</u>, 482 U.S. 270, 279 (1987); <u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.</u>, 419 U.S. 281, 295-96 (1974).  Reflecting this disfavor, we review an agency's denial of a request to reopen for abuse of discretion, recognizing that the requesting party bears a "heavy burden" and that the agency deserves

deference in deciding when its final decisions warrant reconsideration. Abudu, 485 U.S. at 109-110 & n.15; see 5 U.S.C. § 706(2)(A).

Here, we cannot say the IBIA abused its discretion in denying the request to reopen its Gitchel decision. Raymond, a stranger to the Gitchel proceedings, made his untimely request to reopen more than a year following Gitchel, and more than six years after the BIA cancelled Certificates 64 and 65. During those many years, Raymond and Stanley failed to assert their rights as putative heirs despite knowledge of the agency's position, while the lands in question were occupied and used by members of the Community, creating conflicting interests and expectations. Moreover, the IBIA rulings that Stanley did not properly join the appeal and Raymond failed to establish his standing as Edward's heir do not reflect arbitrary and capricious decision-making.

Finally, though Raymond based his request to reopen on newly discovered evidence, he and Stanley presented no new evidence to the agency, other than asserting they are "heirs" within the meaning of Certificates 64 and 65. They merely argued that the BIA "overstepped its authority" when it cancelled the Certificates. As no statute expressly authorizes reopening on the ground of BIA error, it is arguable that the denial order is not judicially reviewable at all. See Locomotive Eng'rs, 482 U.S. at 279-280. But the government did not make this argument, so we will assume that denial of a motion based on agency error, like denial of a motion based on newly discovered evidence, is reviewable for abuse of discretion. Without reaching the merits of the Gitchel decision, we conclude the IBIA did not abuse its discretion in refusing to reconsider that decision at the untimely request of strangers to the Gitchel proceedings.

The Gitchel decision was consistent with longstanding agency policy regarding the temporary nature of the rights assigned by Indian Land Certificates. In an earlier decision, the IBIA thoroughly reviewed the background of Indian Land Certificates

and the longstanding agency policy construing them as bestowing "a tenancy personal to the assignment holder and her heirs conditioned upon personal occupancy and personal use," rather than an ownership interest that the Certificate holder's heirs may inherit. Brewer v. Acting Deputy Assistant Sec'y, 10 IBIA 110, 119 (1982). The IBIA construed the 1980 Act as approving this policy by including lands subject to existing Certificates in the lands placed in trust for the Community, subject only to the occupancy and use rights of Certificate holders and their heirs during the life of the Certificates. In Gitchel, the IBIA applied Brewer and this longstanding agency policy and held that Certificates 64 and 65 conveyed no inheritable interest in the lands to the heirs of John or Edward Cermak and therefore the BIA properly cancelled those Certificates upon the death of their holder, John Cermak. The request to reopen filed by Raymond gave the agency no adequate reason to reconsider this decision.

At oral argument, appellants conceded that only the APA claims are before us on this appeal. Accordingly, the judgment of the district court is affirmed.

_____